UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____
ALEXANDRE B. DEMOURA, M.D., d/b/a NEW
YORK SPINE INSTITUTE, INC.

                                        Plaintiff,

            -against-

CONTINENTAL CASUALTY COMPANY,

                                        Defendant.
_____

**MEMORANDUM & ORDER**
**20-CV-2912 (NGG) (SIL)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Alexandre B. deMoura, M.D., d/b/a New York Spine Insti-
tute, Inc. ("DeMoura" or "Plaintiff") brings this insurance coverage
lawsuit against Defendant Continental Casualty Company ("Conti-
nental" or "Defendant"). Plaintiff alleges that his property
insurance policy ("the Policy") with Defendant provides coverage
for business income losses and expenses incurred as a result of the
COVID-19 pandemic and due to his compliance with various public
health mandates issued by Governor Andrew Cuomo and the State
of New York in response to the pandemic. Plaintiff seeks a declara-
tory judgment that his losses and expenses are covered by the
Policy. Before the court is Defendant's Motion to Dismiss the Com-
plaint under Federal Rule of Civil Procedure 12(b)(6) or, in the
alternative, to strike certain allegations from the Complaint. (*See*
Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mot.") (Dkt. 20-1);
Pl.'s Mem. in Opp. to Mot. to Dismiss ("Pl.'s Opp.") (Dkt. 20-4); Def.'s
Reply (Dkt. 20-6).) For the reasons stated below, Defendant's mo-
tion to dismiss is GRANTED.[1]

_____

[1] Because this court holds that Plaintiff has failed to state a claim for relief,
Defendant's Motion to Strike is moot.

## I.  BACKGROUND

### A.  FACTS

The following facts are taken from the Complaint, which the court accepts as true at this procedural posture. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).[2] Plaintiff is the owner and operator of New York Spine Institute, Inc. ("New York Spine"), which specializes in spine and orthopedic procedures, physical therapy, and pain management treatment. (Compl. (Dkt. 1) ¶¶ 9, 13.) On or about February 11, 2020, Plaintiff entered into the Policy with Defendant for coverage of New York Spine. (*Id.*) Plaintiff asserts that the Policy is an "all-risk policy," meaning that it provides coverage for physical loss or damages unless specifically excluded by the Policy. (*Id.* ¶ 18.)

Plaintiff relies on three provisions which he alleges cover his losses: The Business Income provision, the Extra Expense provision, and the Civil Authority provision. (*Id.* ¶¶ 16-17.) The Business Income and Extra Expense provisions, together, cover losses and expenses incurred in certain situations where the business is suspended due to physical loss of or damage to the property, and the Civil Authority provision covers certain situations where the business is inaccessible due to a civil authority action resulting from physical loss of or damage to property other than the covered premises. (*Id.*) Plaintiff asserts that he purchased the Policy and paid premiums to Defendant "with an expectation that it . . . would provide coverage in the event of business interruption and extended expenses, such as that suffered by Plaintiff as a result of COVID-19," including those specifically caused by "business interruptions or closures by order of Civil Authority." (*Id.* ¶¶ 16, 27.)

Beginning in March 2020, the State of New York and Governor Cuomo issued various public health mandates related to the COVID-19 pandemic. These included orders declaring a state of

---

[2] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

emergency, restricting the size of in-person gatherings, requiring non-essential workers to stay at home, canceling elective surgery and procedures statewide, and requiring the use of face coverings in public (the "Orders"). (*Id.* ¶¶ 41-45.) On March 16, 2020, in compliance with the Orders, Plaintiff ceased performing non-emergency surgical procedures and operations. (*Id.* ¶¶ 50, 51, 55.) This resulted in the cessation of "[a]lmost all of the medical services Plaintiff provides." (Compl. ¶ 55.)

Plaintiff seeks a declaratory judgment that the Policy covers the losses and expenses that he incurred as a result of his compliance with the Orders. (*Id.* ¶¶ 32-35.) Plaintiff asserts that the Orders forced Plaintiff to cancel or suspend "[a]lmost all" medical services, including elective procedures; patient visits and post-operative care; and physical therapy and pain management appointments. (*Id.* ¶¶ 53, 55.) Plaintiff also asserts that his business is highly susceptible to rapid person-to-person transmission of the virus. (*Id.*) Accordingly, Plaintiff asserts that he suffered more than approximately $150,000 in business losses, business interruption, and extended expenses of the nature covered by the Policy. (*Id.* ¶¶ 4, 57.)

### B.   Contractual Provisions

The parties dispute the coverage available to Plaintiff under three provisions of the Policy: The Business Income provision; the Extra Expense provision; and the Civil Authority Coverage provision. The parties also dispute whether the Policy specifically excludes the kind loss suffered by Plaintiff here.

The Business Income provision states, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or

> damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

(Compl. Ex. A (Dkt. 1-1) at ECF p. 44.)

The Extra Expense provision states:

> Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> (1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or
>
> (2) Minimize the "suspension" of business if you cannot continue "operations."
>
> We will also pay Extra Expense (including Expediting Expenses) to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under [the Business Income provision].

(*Id.* at ECF p. 45.)

The Policy defines the terms quoted in the above provisions as follows:

> **"Suspension"** means: (a) The partial or complete cessation of your business activities; or (b) That a part or all of the described premises is rendered untenantable.
>
> . . .

> **"Operations"** means the type of your business activities oc-
> curring at the described premises and the tenantability of the
> described premises.
>
> . . .
>
> **"Period of restoration"** means the period of time that: (a) Be-
> gins with the date of direct physical loss or damage caused by
> or resulting from any Covered Cause of Loss at the described
> premises; and (b) Ends on the earlier of (1) The date when the
> property at the described premises should be repaired, rebuilt
> or replaced with reasonable speed and similar quality; or (2)
> The date when business is resumed at a new permanent loca-
> tion.

(*Id.* at ECF pp. 39, 41.)

The Civil Authority Coverage provision states, in relevant part:

> When the Declarations show that you have coverage for Busi-
> ness Income and Extra Expense, you may extend that
> insurance to apply to the actual loss of Business Income you
> sustain and reasonable and necessary Extra Expense you in-
> cur caused by action of civil authority that prohibits access to
> the described premises. The civil authority action must be due
> to direct physical loss of or damage to property at locations,
> other than described premises, caused by or resulting from a
> Covered Cause of Loss.

(*Id.* at ECF p. 68.)

## II.   LEGAL STANDARD

### A.   Choice of Law

Plaintiff has brought this diversity action pursuant to 28 U.S.C. §
1332. "Under the *Erie* doctrine, federal courts sitting in diversity
apply state substantive law and federal procedural law." *Gasperini
v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R.
Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In this contract litigation,

New York is the state with the "most significant relationship" to the issues in the case, which the parties do not dispute. *See Am. Centennial Ins. Co. v. Sinker*, 903 F. Supp. 408, 412 (E.D.N.Y. 1995). Therefore, New York substantive law applies.

### B.   Pleading Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In conducting its analysis, the court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.2010) (quoting *Twombly*, 550 U.S at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, "in assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as 'documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

## III.  DISCUSSION

Defendant has moved to dismiss the Complaint for failure to state a claim under Federal Rule of Procedure 12(b)(6). Defendant argues that the losses claimed by Plaintiff are not covered under the Business Income or Extra Expense provisions because they were not "caused by direct physical loss of or damage to property." Defendant also argues that the claimed losses are not covered by the Civil Authority provision, because New York Spine was not made

inaccessible by government action that resulted from such loss of or damage to property at locations other than New York Spine. Plaintiff opposes Defendant's motion, arguing that the provisions cover losses due to lost access to property and that, even if physical damage is required, the potential presence of the virus in his business meets the requirements of the Policy. Plaintiff further argues that his losses are covered because the Policy does not contain a specific provision excluding losses caused by virus or pandemic.

Under New York law, "[a]n insurance agreement is subject to principles of contract interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (2015). "The initial interpretation of a contract is a matter of law for the court to decide." *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000). "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008). "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation." *Universal Am. Corp.*, 25 N.Y.3d at 680. "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Matter of Mostow v. State Farm Ins. Cos.*, 88 N.Y.2d 321, 326–27 (1996). "However, parties cannot create ambiguity from whole cloth where none exists, because provisions are not ambiguous merely because the parties interpret them differently." *Universal Am. Corp.*, 25 N.Y.3d at 680. "While the rights and obligations of parties under insurance contracts should be determined by the specific language of the policies, if the language of the policy is susceptible of two reasonable meanings, the parties may submit extrinsic evidence of their intent at the time of contracting." *Newin Corp. v. Hartford Acc. & Indem. Co.*, 62 N.Y.2d 916, 919 (1984).

"It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Grp.*, 225 F.3d at 276. If the policyholder carries that burden, then the "insurer bears the burden of proof [to show] that an exclusion in the policy applies to an otherwise covered loss." *Id.* at n.1.

### A.   Business Income and Extra Expense Coverage

The Business Income provision of the Policy covers losses that result from a suspension of operations caused by "direct physical loss of or damage to property," and are not otherwise excluded. (Compl. Ex. A. at ECF p. 44.) Similarly, the Extra Expense provision—which only applies if the loss is covered by the Business Income provision—provides coverage for "reasonable and necessary expenses" incurred during the "period of restoration" that would not have been incurred absent "direct physical loss of or damage to property." (*Id.*) The parties do not dispute that Plaintiff's operations were—at least in part—suspended, but they disagree over whether the suspension was caused by "direct physical loss of or damage to property." For the reasons explained below, the court holds that the Policy does not cover Plaintiff's losses and expenses.

Plaintiff casts his injury as the kind of "physical loss" or "damage to property" covered by the Policy. The Complaint alleges that the Orders, by requiring New York Spine to close, "resulted in a physical impact on Plaintiff's business." (Compl. ¶ 56.) The Complaint also indicates that COVID-19 was or could have been physically present in the business, as the virus "physically infects and stays on surfaces of objects or materials, 'fomites,' for up to twenty-eight (28) days." (*Id.* ¶ 37, 39.) It further alleges that, because of the close contact that occurs within the medical office and the frequent cycling in and out of visitors and employees, there was an "ever-present risk that the office is contaminated and/or would [] become contaminated and would continue to be contaminated." (*Id.* ¶ 52-55.)

The Policy defines "suspension," "operations," and "period of restoration," (Compl. Ex. A. at ECF pp. 39, 41), but it does not define

8

"direct physical loss of or damage to property." However, "the lack of a definition" of a word or phrase in a contract, alone, does not make the language ambiguous, especially if its plain meaning is readily discernible. *Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 136 A.D.3d 52 (1st Dep't 2015). To start, New York courts commonly "refer to the dictionary to determine the plain and ordinary meaning of words to a contract." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 567 (2d Cir. 2011).

The question here is whether Plaintiff's property was subject to loss or damage that was both "direct" and "physical." (Compl. Ex. A. at ECF p. 44.) As contextually relevant, "direct" means "[f]ree from extraneous influence; immediate," and "physical" means "[o]f, relating to, or involving material things; pertaining to real, tangible objects." *Direct*; *Physical*, Black's Law Dictionary (11th ed. 2019). Taken together, the plain meaning of "direct physical loss or damage" includes loss or damage that is "immediate," "real," and "tangible."

Other portions of the Policy support the conclusion that "direct physical loss of or damage to property" requires tangible harm to that property. Both the Business Income and Extra Expense coverage limit the duration of coverage to the "period of restoration," which "begins with the date of direct physical loss or damage" and ends either when the property is "repaired, rebuilt or replaced" or when the business relocates. (Compl. Ex. A at ECF pp. 39, 41, 44, 45.) Instructively, Black's Law Dictionary defines "repair" to mean "[t]o restore to a sound or good condition after decay, waste, injury, partial destruction, dilapidation, etc.; to fix (something broken, split, or not working properly)." *Repair*, Black's Law Dictionary (11th ed. 2019).[3] Because something must first be physically damaged in order to be "restore[d] to a sound or good condition" or

---

[3] Black's Law Dictionary does not include definitions for other key terms used in this paragraph ("restoration," "rebuilt," "replaced").

"fix[ed] it follows from the plain language of the Policy that "physical loss of or damage to" requires a change to the real, tangible property at issue for coverage to apply.

New York courts have consistently understood identically worded insurance clauses to exclude business interruption losses from coverage when the losses were not caused by real, tangible damage to or loss of the property. *See, e.g., Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6-7 (1st Dep't 2002); *Howard Stores Corp. v. Foremost Ins. Co.*, 82 A.D.2d 398, 401 (1st Dep't 1981), *aff'd*, 56 N.Y.2d 991 (1982). In *Roundabout Theater*, the plaintiff theater company was required to cancel its 35-show run of *Cabaret* after a construction accident caused New York City to close streets in its immediate vicinity. The theater company claimed that the loss was covered by its insurance policy, under the provision regarding "direct physical loss or damage to the property." *Roundabout Theater*, 302 A.D.2d at 4-5. Based on the plain language of that phrase, the Appellate Division explained that "the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property." *Id.* at 7. Because the reason for the suspension—a construction accident and the City's closure of the streets—did not inflict any "physical" damage on the theater, the court held that loss or damage resulting from the suspension was outside the policy's scope of coverage. *Id.*

Plaintiff disagrees that "physical loss of or damage to property" requires actual tangible harm to property, arguing instead that it includes both loss of access and damage caused by the potential presence of the virus at New York Spine. He posits that interpreting "physical" damage to require actual tangible harm is "contrary to the plain, reasonable, and intended language of the policy." (Pl.'s Opp. at 11.) He argues that "physical loss of" property is an alternative basis for coverage, which is independent from coverage flowing from "damage to" the property, and that "physical loss of" necessarily includes "loss of use of" the property. (*Id* at 12.) To hold otherwise, he reasons, would eliminate the purpose of including

both phrases by limiting coverage to circumstances where "damage" occurred, regardless of whether there was a separate loss of the property. (*Id.*)

Plaintiff's interpretation of "loss" is contrary to the natural reading of the Policy. It is true that "loss" may, in some circumstances, refer to the loss of access. *See Loss*, Black's Law Dictionary (11th ed. 2019) (including, among other definitions, the definition of loss to mean "[t]he failure to maintain possession of a thing"). However, it is also true that, in other circumstances, "loss" may refer "the disappearance or diminution of value." *Id.* Read together with the modifier "physical," the phrase "physical loss of or damage to property" in this context plainly covers two scenarios: one where "physical loss" occurs—which naturally refers to a situation where the value of the property as a whole "disappear[s] or "dimin[ishes]"—and one where "damage" occurs—that is, where the property is harmed but not destroyed.

Plaintiff's interpretation of "physical loss of or damage to property" to include the potential presence of the virus is similarly unavailing. *First*, he does not allege that the virus was, in fact, present in his business. Instead, he asserts that there was an "ever-present risk that the office is contaminated and/or would [] become contaminated and would continue to be contaminated." (Compl. ¶ 52.) *Second*, there are no allegations that the potential presence of the virus caused "physical harm" to his property. *Damage*, Black's Law Dictionary (11th ed. 2019) (defining "damage" as "[l]oss or injury to . . . property; esp., physical harm that is done to something"). Neither of his arguments suggest that his property itself was harmed by the virus or its potential presence.

Accordingly, it is clear that "direct physical loss or damage to property" requires actual, tangible harm to the property. Because Plaintiff has failed to allege that such harm occurred, he has not met his burden to plead that the Business Income or Extra Expense provisions cover his losses.

### B. Civil Authority Coverage

Plaintiff next asserts that the Civil Authority provision covers the loss and damages allegedly suffered by New York Spine. (Compl. ¶ 57.) Defendant argues that the Civil Authority provision is inapplicable because (1) the Orders were not issued due to direct physical loss of or damage to property at locations other than New York Spine and (2) the Orders have not prohibited access to New York Spine. (Def.'s Mot. at ECF pp. 25-28.)

The Civil Authority provision applies in certain circumstances where government actions prohibit access to the covered premises. Like the Business Income and Extra Expense provisions, the Civil Authority provision requires "direct physical loss of or damage to property" in order to be in play. Unlike those provisions, Civil Authority coverage requires the existence of civil authority actions that (1) are "due to" such physical loss or damage to property at locations "other than the described premises" and that (2) "prohibit[] access to the described premises." Specifically, and as set out previously, the Civil Authority provision states:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, covered by or resulting from a Covered Cause of Loss.

(Compl. Ex. A at ECF p. 68.)

Defendant first argues that the Civil Authority provision is inapplicable because the Orders were not issued due to direct physical loss of or damage to property at locations other than New York Spine. (Def.'s Mot. at ECF pp. 25-28.) The principles of contract interpretation described in the preceding section apply equally here.

12

The Policy's reference to "direct physical loss of or damage to prop-erty" in the Civil Authority provision is identical to the language used in the Business Income and Extra Expense provisions, and there is no indication in the Civil Authority provision that the lan-guage used there should have a different meaning than it does elsewhere in the contract. Because Plaintiff has not alleged addi-tional facts suggesting that property at locations other than New York Spine was subject to such loss or damage, Plaintiff has not suf-ficiently alleged that the Civil Authority provision covers his alleged losses or expenses.[4]

### C. Virus Exclusion

Finally, Plaintiff argues that his losses are necessarily covered be-cause the Policy does not contain an exclusion for losses resulting from a virus or pandemic. (Pl.'s Opp. at 29-35.) He argues that, hav-ing pleaded that the provisions discussed provide coverage for his losses, the Policy must specifically exclude loss or damage caused by either a virus or pandemic in order to deny coverage. (*Id.*) Be-cause Plaintiff has failed to state a claim for relief under the provisions discussed above, the question of whether the Policy contains an exclusion for losses caused by virus or pandemic is moot.

### IV. CONCLUSION

For the foregoing reasons, Continental's Motion to Dismiss for Fail-ure to State a Claim (Dkt. 20) is GRANTED. Plaintiff's Complaint is DISMISSED with prejudice. The Clerk of the Court is respectfully DIRECTED to enter judgment for Defendant and close the case.


SO ORDERED.

---

[4] Because Plaintiff has not sufficiently alleged that this requirement of the Policy was satisfied, the court need not reach Defendant's second argument that coverage under the Civil Authority provision is unavailable because the Orders did not prohibit access to New York Spine.

Dated:    Brooklyn, New York
          March 5, 2021

           /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge